IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SAUNDRA SIRMANS, | * |
| Plaintiff, | * |
| v. | *   Case No. 1:21-cv-00618-CCB |
| UNIVERSITY OF MARYLAND | * |
| MEDICAL CENTER, LLC, | * |
| Defendant | * |

## PLAINTIFF'S MEMORANDUM OF MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLANTIFF'S COMPLAINT

Self-representative Pro Se Plaintiff Saundra Sirmans will provide reasonable support, which will include precedent to oppose the Defendant's motion to dismiss the Plaintiff's complaint/charge/claim of discrimination based on race, age, and retaliation.

In the Defendant's motion to dismiss the Plaintiff's complaint/charge/claim of discrimination based on race, age, and retaliation the counsel for the representative notes that the Plaintiff did not check off "color" as the basis of discrimination, and that is correct. The Plaintiff did not check off "color" as that is not the basis of the discrimination complaint. The Plaintiff does not identify as a "color", but does identify as "African American", which denotes race.

Defendant provided in the motion to dismiss memorandum Exhibit 1, a copy of EEOC form 5 (11/09), which provides choices of discrimination based on; race, color, sex, religion, national origin, retaliation, age, disability, genetic information, and other (specify), with the

1

option to check appropriate box(es). The Plaintiff chose the appropriate boxes that best describes the Plaintiff's claim/complaint of discrimination based on race, age, and retaliation.

Defendant also notes the Plaintiff's complaint fails to allege a *prima facie case* of discrimination, because *"there is no allege satisfactory job performance, that subjects the plaintiff to an adverse employment action, or any circumstances giving rise to a plausible inference of unlawful discrimination."* Plaintiff is providing in Exhibit 2, a copy of the plaintiff's initial review, which indicates satisfactory job performance as denoted by "employee is meeting expectations" relative to essential functions, behavioral standards and attendance and punctuality.

The Plaintiff was not provided appropriate onboarding and expressed this several times to Senior Lead Transplant Coordinator Brin Simons. Please see Exhibit 3 SUBJECT: NEW EMPLOYEE ORIENTATION, PROCEDURE NOL S-507, Types of Orientation B.

*Department orientation must include the department's work rules regarding meal periods, breaks, staff meetings, absenteeism, and other policies and procedures which are germane to the orderly functioning of the department. In addition to general orientation, each newly hired employee will be oriented to the specifics of the job by the Department Head or designee during a department orientation.*

In the Initial Review Exhibit 2, Brin Simons notes that the Plaintiff "has expressed concerns with onboarding." Plaintiff notes the Defendant has policies and procedures that support equity in the workplace as well as orientating new employees to support safety in the role.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff was employed by Defendant from March 2018 until May 14, 2021. On September 7, 2020 Plaintiff contacted EEOC to file a claim of racial discrimination based on race, age, and retaliation. It was not until the scheduled intake in November 2020 that the Plaintiff had an opportunity to explain to the EEOC representative the reason for the complaint/claim of racial discrimination. The representative for EEOC subsequently summarized and filed the Plaintiff's complaint/claim as requested by the Plaintiff on November 25, 2020. Approximately two weeks after filing the complaint/claim EEOC elected not to pursue the case and mailed the Plaintiff a right to sue letter as noted In the Defendant's motion to dismiss.

However, the Defendant did not include in the motion to dismiss that the Plaintiff contacted EEOC September 7, 2020 and had to wait two months before intake to file a claim. On November 13, 2020, a chronological statement was sent via email to EEOC, which highlights the racial discrimination-based on race, age, and retaliation. See Exhibit 4

On March 10, 2021, the Plaintiff did file a Complaint with this Court. ECF No. 1. In the Plaintiff's complaint, the Plaintiff provides factual interactions included but not limited in the Defendant's motion to dismiss, delineating various colleagues and supervisors' interactions that Plaintiff characterizes as "mircroaggressions".

Between the time of November 2019 until the Plaintiff was placed on medical leave in September 2020, the Plaintiff was subjected to discrimination based on race, age by the parties noted in Exhibit 4 (chronological timeline) and subjected to retaliation after bringing the claim/complaint to the attention of the Senior Lead Transplant Coordinator Brin Simons and the HR Business Partner Amie Shank.

Brin Simons was initially notified by the Plaintiff on June 23, 2020 that the Plaintiff was subjected to racial discrimination. The Plaintiff was not able to inform anyone prior to June 2020, as the Plaintiff was segregated from March 2020 until Brin Simons returned from maternity leave in June 2020. While Brin Simons was on maternity leave no one was assigned to ensure the Plaintiff's on-boarding continued. When Brin Simons was informed by the Plaintiff of her being subjected to racial discrimination, Brin Simons said she would need to inform the Director of Operations Thomas Trobiano. The Plaintiff then received a Zoom meeting invite to meet with Brin Simons and the HR Business Partner Amie Shank.

The initial Zoom meeting to discuss the Plaintiff's concerns occurred on June 30, 2020, in attendance was the Plaintiff, Brin Simons and Amie Shank. During the Zoom meeting the Plaintiff again informed Brin Simons along with Amie Shank (who the Plaintiff met for the first time), of the of individual's involved in the racial discrimination.

The Plaintiff followed up with subsequent emails to Amie Shank between July 1, 2020 until July 28, 2020. In the email communication between the Plaintiff and Amie Shank, the Plaintiff never received any follow-up notification of the racial discrimination as noted in Exhibit 5 SUBJECT: ANTI-DISRIMINATION AND HARASSMENT, PROCEDURE NO: S-515, Please see PROCEDURE:

1. Non-discrimination

    The organization prohibits discrimination and harassment based on sex, gender, race, color, national origin, religion, marital status, family status, age, disability, sexual orientation, gender identify and/or expression, or any other protected status.

4

- Treating and individual differently on the basis of and individual's protected characteristics.
- Segregating individuals on the basis of the individual's protected characteristics.
- Making decisions on the basis of an individual's protected characteristics.

Also, the Plaintiff never received any assistance from HR Business Partner Amie Shank, nor was there any investigation conducted based on (section D. Investigation). When the Plaintiff attempted to transfer to another role (VIII. Support for Victims of Harassment), after applying for four positions via the Defendant's intranet portal, none of the recruiters for the roles the Plaintiff applied for ever notified the Plaintiff. This likely happened as a result of the HR Business Partner unwillingness to inform the recruiters that the Plaintiff could transfer out of the current role even though the one-year requirement to transfer was not met. In Exhibit 6 SUBJECT: JOB POSTING, TRANSFERS, AND PROMOTIONS under Procedure 4.2 Inter-Departmental Promotions and Transfers (between Departments)

*"exceptions must be approved by the Vice President of Human Resources, or designee."*

This concern was brought to the VP of HR Susan Hussey via email Exhibit 7 on September 9, 2020, and during a follow-up phone call with Susan Hussey between September 10th and 15th of 2020, the Plaintiff expressed that unless Amie Shank informed hiring managers or recruiters, that the Plaintiff could be considered for the role and transfer to another role how would the hiring managers and recruiters know unless Amie Shank informed them.

5

VP Susan Hussey responded to the Plaintiff "you do have a point and that is something to consider in the future." Hence, the plaintiff did not receive a response from the recruiters/hiring managers who were not aware permission was granted for the Plaintiff to transfer.

In addition, the Plaintiff also brought to the attention via the email correspondence to HR Business Partner Amie Shank that there was another individual that was not subjected to working on-call and that it should be equitable for all employees if the role requires every transplant coordinator to do on-call whether the role is pre-transplant or post-transplant. In the email response dated July 17, 2020, Exhibit 8 Amie Shank responded with…

> *"I can't speak on other employees specifically, but I have confirmed that all employees who are required to take call are on the call schedule and if they switch/don't take call, they are responsible for finding their own coverage proactively. If they can't find coverage, they are to take call or face disciplinary action."*

Please see Exhibit 9 which is the on-call schedule from January 2020 until July 2020 that identifies that transplant coordinator Sarah Merrell name was not included on the schedule. This individual is required to take call; however, her name was not on the schedule. This was brought to the attention of Brin Simons and Amie Shank.

When schedules are made and it is the responsibility of all employees who are required to take call as noted by Amie Shank, all individual's names are noted on the schedule and if someone else opts to take the individual's on-call it is noted on the schedule. Please note the person at the time who was making the on-call schedule was Roxanne Brown who the Plaintiff named in the racial discrimination claim. Also. Roxanne Brown, and Sarah Merrell are both

6

friends and younger than the Plaintiff in age (under 40), as well as white/Caucasian. Please see Exhibit 10 Transplant On-Call Policy III. PROCEDURE B. Assignment of On-call Duty

*The Nurse Manager for each organ program (or designee) will determine on-call assignment, assign employees accordingly, and assure the equal distribution of on-call duty among all eligible employees.*

## II. ARGUMENT

### a. Pattern of Discrimination and Retaliation

The discriminatory pattern of practice of negating and marginalizing the Plaintiff's complaint began with the Plaintiff communicating to Senior Lead Transplant Coordinator Brin Simons, younger than Plaintiff (under age 40), white/Caucasian in June 2020. What led to expressing this concern was the frequent and previous comments from Pre-Lung Transplant Coordinator Dana Santos, younger than Plaintiff (not under 40), white/Caucasian, who stated to Plaintiff "Oh, you don't need to know that", and "You are just more studious", followed by exclusion from meetings, inclusive of a survey by the United Network of Organ Sharing (UNOS), and transplants that could have helped to fill the Plaintiff's knowledge gap, due to a lack of appropriate onboarding/orientation as expressed to Brin Simons.

The responsibility of onboarding/orientation in any area of nursing is to prepare the employee to function safely in their role, governed by the respective State's Nurse Practice Act, along with established employer policies and procedures. Providing the Plaintiff with check-off lists, with no identified policies or procedures, in addition to Dana Santos stating to the Plaintiff "Oh, you don't need to know that", placed the Plaintiff in a position to practice unsafely.

7

Placing the Plaintiff in a position to practice unsafely jeopardized patient care and the Plaintiff's nursing license. Dana Santos' statements of "Oh, you don't need to know that", coupled with "you are just more studious", followed by being segregated caused the Plaintiff to suffer from anxiety, depression and bathmophobia.

Defendant also notes the plaintiff retaliation claims should be dismissed because she was not subject to and adverse employment action, and thus, fails to state a claim. The Plaintiff will highlight a pattern of practice that includes continuous adverse employment action that includes email responses from Thomas Trobiano, Patrick Kelly, and Amie Shank. In addition, the lack of response to the Plaintiff's request for an accommodation based on medical documentation also identifies a continued pattern of practice of adverse employment action.

The Plaintiff received an email from Thomas Trobiano on September 11, 2020 advising Patrick Kelly would be the contact in HR to transition the Plaintiff to a new role by October 30, 2020. The Plaintiff requested via email that Patrick Kelly clarify what happens if the Plaintiff does not transition into a new role by October 30, 2020. The Plaintiff never heard back from Patrick Kelly, which further heightened the Plaintiff's anxiety, depression and bathmophobia.

This was an adverse employment action as Patrick Kelly did not respond to the Plaintiff's inquiry when he was the individual identified by Thomas Trobiano to transition the Plaintiff to another role. Thomas Trobiano's email to the Plaintiff also represents an adverse employment action, as the Plaintiff's claim/compliant of racial discrimination based on age, race and retaliation was never addressed by Thomas Trobiano who serves in leadership role and who is the next in the chain of command after Brin Simons. Both Thomas Trobiano and Patrick Kelly are white/Caucasian males under the age of 40.

On November 2, 2020, the Plaintiff contacted Lincoln Financial Group via phone re: not receiving pay for several weeks. The representative at Lincoln Financial Group advised the Plaintiff to follow-up with the HR Business Partner. The Plaintiff emailed the HR Business Partner Amie Shank on November 2, 2020 Exhibit 11 and informed her of what Lincoln Financial Group advised the Plaintiff to do about not receiving pay, as the short-term disability was already approved. Amie Shank gave the Plaintiff the runaround with back-and-forth emails when the Plaintiff asked her who could assist the Plaintiff with getting compensation as it had been some time since the Plaintiff was paid. This was a form of adverse employment action against the Plaintiff who never received any pay until two weeks later. It was a total of one and a half months before the Plaintiff received any compensation. This further exacerbated the Plaintiff's anxiety, depression and bathmophobia.

Prior to Plaintiff finally receiving an email response from Stacey Caprino on March 24, 2021, the third- party Lincoln Financial Group, which handled the Plaintiff's short term disability claim and accommodation request submitted January 4, 2021 reached out to the Amie Shank, Stacey Caprino and Keith Peron on separate occasions. The dates that the representative or representatives at Lincoln Financial Group communicated to the Defendant to inquire about the accommodation request are as follows: Date of email to Amie Shank was not provided, email to Keith Peron was on January 5, 2021. Emails to Stacey Caprino was on February 17, 2021, and February 22, 2021, and on March 11, 2021 an email was sent to the Total Rewards in the Benefits Department of the Defendant as the Lincoln Financial Group representative stated she opted to use that portal since no one responded to her previous inquiries about the Plaintiff's accommodation.

The representative or representatives at Lincoln Financial Group never received any response from the Defendant. These adverse employment actions in the form of no email responses from HR Business Partners-Amie Shank, Stacey Caprino, and Keith Peron, further exacerbated the Plaintiff's anxiety, depression and bathmophobia.

The Plaintiff also communicated via email to Stacey Caprino on March 18, 2021 that the Plaintiff was willing and able to work and to date there had been no response to the emails sent by the Lincoln Financial Group's representative re: the accommodation request. This message sent to Stacey Caprino on March 18, 2021 was also sent via the Employee portal as an open ticket to ensure someone would respond to the Plaintiff's inquiry about the accommodation request. It was not until after the Defendant was served on March 22, 2021, that the Plaintiff received an email from Stacey Caprino Exhibit 12 on March 24, 2021 requesting to set up a phone call to discuss the accommodation. Please note Stacey Caprino was contacted two times in February re: The Plaintiff's accommodation request.

The phone call between the Plaintiff and Stacey Caprino was set up for March 31, 2021. During the phone call the Plaintiff was informed by Stacey Caprino that the Plaintiff had to pick a position that best suits her skill set, and that she Stacey Caprino did not have a copy of the Plaintiff's resume. On March 31, 2021, the Plaintiff emailed Stacey Caprino a copy of the Plaintiff's resume. Stacey Caprino advised the Plaintiff she would email the Plaintiff two job opening lists. The email with the lists was received on March 31, 2021. Exhibit 13, email communication between March 31, 2021 until April 13, 2021.

The Plaintiff reviewed the list and provided Stacey Caprino with six job requisition numbers. Stacey Caprino only followed up on one and the Plaintiff advised that the list would be reviewed again as the job requisition Stacey Caprino followed up on for Senior Ambulatory

Nurse Care Coordinator role was with a previous department the Plaintiff had left prior to being hired for the Division of Transplantation. On April 9, 2021, the Plaintiff sent an email to Stacey Caprino inquiring if applying for unemployment would be an issue as the accommodation request was submitted January 4, 2021 and the Plaintiff's short-term disability ended March 16, 2021 and the Plaintiff was left with no income. Stacey Caprino responded via email as follows:

> *As for applying for unemployment, you can certainly apply for unemployment if you'd like. If you do apply, the claim will be sent to HR to respond. We will respond truthfully about your status which is that you are on an unapproved LOA right now.*
>
> *Also, I can't advise as to whether or not you would be eligible for unemployment under these circumstances as we don't make that decision. The Maryland Department of Labor makes those determinations. However you can certainly apply.*

The Plaintiff sent an email response to Stacey Caprino on April 10, 2021 as follows:

> *I hope that the truth about the unauthorized leave of absence, which I was not informed about, will also include that a medical request for accommodation was made 1/4/21 and there was no response to the request until 3/24/21.*

The Plaintiff on April 12, 2021 sent an email to Stacey Caprino to inquire about the previous job requisitions submitted to her for follow-up with the recruiters in addition to two new job requisition numbers. Stacey Caprino never responded to the other job requisitions and steered the Plaintiff to interview with a position in the Stoler Oncology Outpatient Medical Clinic as an oncology nurse coordinator/nurse navigator.

After doing some share time, April 23, 2021 at the oncology outpatient medical clinic with a nurse coordinator, it was decided between the Plaintiff and the nurse coordinator that some share time would be prudent when clinic was in session so that the Plaintiff could get a feel

for the clinic flow. While waiting for the possibility of more share time the Plaintiff sent an email to Stacey Caprino on April 27, 2021 advising that the Plaintiff is resigning her role as pre-lung transplant coordinator on May 14, 2021. Please see Exhibit 14 re: Plaintiff Resignation.

The continued discriminatory practice patterns by the Defendant relative to the claim/complaint of discrimination based on race, age, and retaliation in addition to not receiving timely accommodation to assist with identifying an accommodating role, along with no income, and the Defendant's motion to dismiss heightened the Plaintiff's anxiety, depression and bathmophobia which led to the decision of a voluntary resignation. This was in the best interest of the Plaintiff's health, as the Defendant acted adversely toward the Plaintiff since claiming/complaining of racial discrimination and retaliation.

The Defendant did not afford the Plaintiff accommodation of disability as indicated in Exhibit 15 SUBJECT: EQUAL EMPLOYMENT OPPORTUNITY/FAIR TREATMENT/ACCOMMODATION OF DISABILITIES, PROCEDURE NO: S-100. V. ACCOMMODATION OF DISABILITIES, (3) Relocating and employee's work area, (5)Transferring the employee to a less strenuous position.

Due to the sensitivity of the Plaintiff's diagnosis of anxiety, depression and bathmophobia, the Plaintiff humbly request that this information contained in the healthcare notes remain confidential between the medical provider, psychotherapist, and Plaintiff. However, the Plaintiff will provide a copy of the following documents Exhibit 16: *Functional Mental Status Evaluation Form; Restriction Form; Beck Anxiety Inventory (BAI); Hamilton Anxiety Rating Scale*, that were requested by the Defendant to support short term disability, and the accommodation request submitted January 4, 2021.

Lastly, the Plaintiff received an email from counsel Teresa D. Teare representing the Defendant on April 15, 2021 at 10:43am advising the Plaintiff as follows: Exhibit 17.

*Please be advised that I represent the University of Maryland Medical Center, LLC in the above referenced matter. Yesterday we became aware that service was previously made by the US Marshal. We will be asking the Court for an additional 14 days, or until April 28, 2021 to respond to the Complaint. Kindly let us know if you consent to this extension of time. Should you need an similar extension of time in the future, we would return the courtesy.*

*We will be filing the request with the Court today. Please let me know your position by the end of the day today.*

The Plaintiff was not given an option of consent, as the Defendant clearly stated in the email "the request would be filed with the Court today. As noted previously the Defendant did not provide an excusable neglect to the reason for filing an extension. The Defendant was served the complaint by the Plaintiff on March 22, 2021 and the SUMMONS IN A CIVIL ACTION indicates "within 21 days after service of this summons on you (not counting the day you received it)—or 60 days if you are the United States or a United States Agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3)—you must serve on Plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgement by default will be entered against you for the relief demanded in the complaint. You also must file answer or motion with the court.

The Plaintiff received via forwarded mail the DEFENDANT'S MOTION FOR EXTENSION OF TIME TO ANSWER PLAINTIFF'S COMPLAINT the week of May 4, 2021, as the Plaintiff moved, and the new address was filed with the Court after the Defendant mailed the motion for extension of time. Defendant indicates "due to an administrative oversight, however, the complaint was sent to Defendant's Risk Management Department and not the Legal Department. Pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), the Defendant did not provide an "excusable neglect". The Defendant admits the counsel for Defendant received the summons on March 22, 2021; however, it was sent to the wrong department. A total of 23 days passed before the counsel for Defendant was made aware that a summons was served to the wrong department.

The Plaintiff believes the counsel for the Defendant did not plan to respond to the Plaintiff's complaint as the Plaintiff did not receive a response until March 24, 2021 from the Defendant's HR department relative to the accommodation request made on January 4, 2021, after the Defendant was served the summons on March 22, 2021. The Plaintiff humbly request the Court request all written correspondence between the Defendant's HR department and the counsel for Defendant prior to the counsel for Defendant filing an extension and motion to dismiss Plaintiff's complaint be submitted to the court for discovery under Federal Rule of Civil Procedure 26(a)(1).

This request is not unreasonable as excusable neglect under rule 6(b) is an "elastic concept." Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392 (1993). In assessing whether a party's neglect is excusable, a court must take into account "all relevant

circumstances surrounding the party's omission, "including: (1)danger of prejudice to the other party; (2) the length of the delay and its potential impact on judicial proceedings; (3)whether the cause of the delay was within the reasonable control of the moving party; and (4)whether the movant acted in good faith. Id. at 395; Kimberg, 411 Fed. Appx. at 477. "

The Defendant did not act in good faith as the Plaintiff was told that the Defendant would be filing and extension and asked if the Plaintiff would provide consent and to respond at the end of the day on the same day the email was sent, Exhibit 17.

### III. CONCLUSION

Plaintiff is providing the POLICY: ANTI-RETALIATION, POLICY # S-102 for further support of the Plaintiff;s claim/complaint of discrimination based on race, age, and retaliation. Plaintiff within the memorandum in opposition of the Defendant's motion to dismiss the Plaintiff's complaint, has shown a pattern of practice by the Defendant.

Please see "*Burlington Northern & Santa Fe Railway v. White (No. 05-259), under the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, the court made three important explanatory points:*

1. *It is important to distinguish "significant from trivial", harms.*
2. *It used the phrase "reasonable employee" to make clear that the standard is an objective, rather than subjective one; and*
3. *It defined the standard in general terms because the decision as to whether it is an adverse action must be decided in context.* "

15

Date: May 14, 2021                                       Respectfully submitted,

*[signature]*

Saundra Sirmans

2804 Upridge Ct., Apt F

Parkville, MD  21234

Tel: 917-821-4684

Nitenurse1965@gmail.com

*Plaintiff, Pro se*